(C.D. 4543)

SYMPHONIC ELECTRONICS CORP. *v.* UNITED STATES

Court Nos. 70/56204 and 70/64354

(Decided May 20, 1974)

*Barnes, Richardson & Colburn* (*Irving Levine* of counsel) for the plaintiff. *Carla A. Hills,* Assistant Attorney General (*John N. Politis,* trial attorney), for the defendant.

NEWMAN, Judge: These two consolidated protests concern the proper dutiable status of certain merchandise invoiced as "R835 AM/FM tuners" imported by plaintiff from Taiwan through the port of Boston, Mass. in June 1970.

The merchandise was classified by the district director of customs as "solid-state (tubeless) radio receivers" under item 685.23 of the Tariff Schedules of the United States (TSUS), modified by T.D. 68–9, and assessed with duty at the rate of 11 per centum ad valorem.

Plaintiff advances five alternative claims under the following TSUS item numbers: 685.25, 685.30, 685.50, 678.50 and 688.40. The primary claim is that the imports are dutiable at the rate of 8.5 per centum ad valorem as radio reception apparatus or parts thereof, other than solid-state radio receivers, under item 685.25, TSUS. Alternatively, plaintiff contends that the R835 tuner has the capability of switching from one function to another, i.e., from radio to phonograph, or tape recorder, and therefore is dutiable at the rate of 9.5 per centum ad valorem under item 685.30 as a radio-phonograph combination, or at the rate of 10 per centum ad valorem under item 685.50 as a radio-phonograph-tape recorder combination, or part thereof.

Plaintiff's claims that the merchandise is properly dutiable under item 678.50 as machines or parts thereof, not specially provided for, at the rate of 7 per centum ad valorem, or under item 688.40 as electrical articles or electrical parts of articles, not specially provided for, at the rate of 8 per centum ad valorem, are based upon the contention that "this imported article [R835 tuner] is chiefly used in a radio-phonograph-tape *player* combination (incapable of tape recording but only of playing pre-recorded materials) and, therefore, is outside the scope of the provision(s) for tape recorder combination articles".

All of plaintiff's claims are predicated upon the argument that the R835 tuner is more than a "radio receiver"; [1] and respecting the claim

[1] There is no dispute between the parties that the R835 tuner is a solid-state (tubeless) device.

that the merchandise is a combination article, plaintiff relies upon General Interpretative Rule 10 (h), viz.: the R835 tuner is an "unfinished" combination article.

Defendant contends that although the merchandise is radio reception apparatus within the superior heading to items 685.20 through 685.25, TSUS, the tuner possesses the basic elements of a solid-state radio receiver, and hence is specifically provided for under item 685.23. Since allegedly, certain transformers were imported with the R835 tuners but were packed separately, and the tuners require a minimal amount of additional work to complete them, defendant relies upon the provisions of General Interpretative Rule 10 (h).

Further, defendant argues that while the R835 tuners were used after importation to manufacture combination articles, they cannot be classified either under item 685.30, or under item 685.50, because in their condition as imported the tuners were merely radio receivers and not substantially complete combination articles; and defendant insists that the tuners cannot be classified as "parts" in contravention of General Interpretative Rule 10 (ij).

Finally, defendant denies the applicability of items 678.50 and 688.40 since the imports were specially provided for under item 685.23.

I have concluded that the merchandise was properly classified by the Government under item 685.23, TSUS, and therefore the protests are overruled.

STATUTES INVOLVED

General Headnotes and Rules of
Interpretation

10. General Interpretative Rules. For the purposes of these schedules—

\* \* \* \* \* \* \*

(h) unless the context requires otherwise, a tariff description for an article covers such article, whether assembled or not assembled, and whether finished or not finished;
(ij) a provision for "parts" of an article covers a product solely or chiefly used as a part of such article, but does not prevail over a specific provision for such part.

Schedule 6, part 5:

\* \* \* radiobroadcasting \* \* \* and reception apparatus, and \* \* \* record players, phonographs, tape recorders, \* \* \* record changers, \* \* \*; all of the fore-

going, and any combination thereof, * * * and parts thereof:

     *     *     *     *     *     *     *

    * * * radiobroadcasting and * * * reception apparatus, and parts thereof:

     *     *     *     *     *     *     *

Other:

| | | |
|---|---|---|
| 685.23 | Solid-state (tubeless) radio receivers | 11% ad val. |
| 685.25 | Other | 8.5% ad val. |
| 685.30 | Radio-phonograph combinations | 9.5% ad val. |

     *     *     *     *     *     *     *

Other:

     *     *     *     *     *     *     *

| | | |
|---|---|---|
| 685.50 | Other | 10% ad val. |

     *     *     *     *     *     *     *

| | | |
|---|---|---|
| 688.40 | Electrical articles, and electrical parts of articles, not specially provided for | 8% ad val. |

Schedule 6, part 4, subpart H:

| | | |
|---|---|---|
| 678.50 | Machines not specially provided for, and parts thereof | 7% ad val. |

## THE ISSUES

The basic issues for decision are:

1. Were the imported tuners properly classified as solid-state radio receivers under item 685.23?

2. Are the tuners properly dutiable as radio reception apparatus or parts thereof, other than solid-state radio receivers, under item 685.25?

3. Is the R835 tuner "more than" a solid-state radio receiver and classifiable as an unfinished combination radio-phonograph under item 685.30, or an unfinished radio-phonograph-tape recorder under item 685.50?

4. Is the R835 tuner classifiable as a machine not specially provided for, or a part thereof, under item 678.50?

5. Is the R835 tuner classifiable as an electrical article or an electrical part of an article, not specially provided for, pursuant to item 688.40?

## THE RECORD

The record comprises the testimony of one witness on behalf of plaintiff, and three witnesses on behalf of defendant. Additionally,

each party submitted several exhibits. Based upon the foregoing record, I make the following findings of fact and conclusions of law:

### FINDINGS OF FACT

1. The entries covered by these protests include R835 AM/FM tuners and an equal number of power transformers separately packed.[2]

2. The transformers served as a power source and are essential to the functioning of the tuners. After importation, the transformers were connected to the tuners by wires.

3. A "tuner" is a device which is capable of receiving radio signals, while a "radio receiver" is comprised of a tuner plus an amplifier.

4. The R835 tuners possess the basic components [3] and circuitry necessary for receiving AM, FM, and FM stereo multiplex signals, and also possess sufficient amplifying capability to operate loudspeakers. However, a "radio receiver" does not necessarily include loudspeakers.[4]

5. R835 tuners have the following controls: on/off; function, which enables the user to select a particular function such as AM radio, FM radio, FM stereo multiplex, record player or tape player; tuning; volume; bass and treble; balance; and automatic frequency control (AFC). In its imported condition, the tuners had no control knobs or calibrated station dial.

6. The R835 tuners were designed and intended for incorporation into combination radio-phonographs (with or without tape player or recorder). The tuners were never sold by plaintiff as "radio receivers" *per se*, but always were incorporated into combination articles containing at least a radio and record player.

7. In a combination radio-phonograph, the tuner is connected by wires or cables to the transformer shipped therewith and to a record changer and speakers. Signals are transmitted through the wiring from the record player to the amplification section of the tuner which amplifies the signals and then transmits them to the speakers where the signals are rendered audible. At the completion of a record cycle, the record changer turns off the combination radio-phonograph. Thus, in a combination radio-phonograph, the record changer utilizes the amplifying capability of the R835 tuner and also usese the various controls on the tuner (on/off, function sleector, volume, bass, etc.).

---

[2] This fact was in dispute at the trial, but plaintiff now concedes in its brief "that accompanying the tuners were an equal number of power transformers of the type used with the R835 tuner." Accordingly, the term "tuners" or "R835 tuners" shall hereinafter be intended to include the transformers.

[3] Both plaintiff's witness Freeland and defendant's witness Kulinyi testified that the basic components of a "radio receiver" are a tuner and amplifier, and that the R835 tuner possessed such components (R. 69–70, 122–123).

[4] Plaintiff's witness Freeland and defendant's witness Mergner and Kulinyi all agreed that "radio receivers" do not necessarily include loudspeakers (R. 70 101–102, 131).

When the function selector is turned to the position for the phonograph or tape player, the tuner does not receive radio signals.

8. A tape player also can utilize the amplifying capability and controls of the tuner. The tape player is activated upon insertion of a cartridge into the player and stops upon removal of the cartridge. However, if the a.c. switch of the tuner were turned to the off position, the power to the tape player would be cut off.

9. "Radio receivers" which have provisions for connecting to a phonograph turntable and to tape equipment are sold by plaintiff's competitors. Such receivers are sold as separate components, and also in combination with a record changer, tape equipment and speakers (called a "package").

10. Radio receivers sold as individual components have a plug strip on the back for connecting other components.[5] Such receivers, however, serve the same function as those used in combination articles—the controls of the receiver are utilized by the phonograph or tape player, and the amplifier portion of the receiver amplifies the signals from the phonograph or tape player.

### CONCLUSIONS OF LAW

1. The R835 tuners are "radio receivers" within the common meaning of that term.[6]

2. "Radio receivers" within the common meaning of the term include tuner-amplifiers which, in addition to receiving radio signals (i.e., AM/FM), are capable of controlling and amplifying signals from a record changer and tape player connected by wires to the tuner-amplifier. Consequently, the R835 tuners are not more than "radio receivers" by reason of the fact that their controls and amplifying capability could be shared or utilized by the other components of a combination article wired (after importation) to the tuner, such as a phonograph turntable or tape player.[7] In their condition as imported, the R835 tuners do not have any features or capabilities which are

---

[5] The R835 tuner has "terminals" for connecting wiring or cables to other components.

[6] *Encyclopaedia Britannica*, 1970 ed., Vol. 11, pp. 485–86, states: "A 'tuner' is employed for reception of radio broadcasts. The hi-fi tuner is simply a refined version of a radio receiver, but without audio amplifier or loudspeaker. * * * [W]*hen a radio tuner is combined with an integrated amplifier, the resulting unit is referred to as a 'receiver'*". [Emphasis added.] See also footnote 3.

[7] If the imports are more than "radio receivers" (due to the fact that their controls and amplifying capability could be utilized by a phonograph or tape player with which the radio is combined after importation), then clearly the imports are more than radio reception apparatus, which is plaintiff's principal claim.

While not directly pertinent to the present issue, in *Garrard Sales Corp.* v. *United States,* 35 CCPA 39, 42, C.A.D. 369 (1947), the appellate court held that a combination radio-phonograph was more than either a radio or phonograph, and in that connection observed:

"It is not disputed that *without the record changer unit the phonograph-radio combination would be just a radio set * * *.*" [Emphasis added.]

not possessed by "radio receivers" within the common meaning of that term.

3. A specific provision for parts of a combination article prevails over a general provision for parts of such combination article. Hence, the R835 tuners are properly dutiable under the *eo nomine* provision for "solid-state (tubeless) radio receivers" in item 685.23, TSUS, notwithstanding the fact that after importation such tuners were incorporated into combination radio-phonographs and other combination articles as parts thereof. General Interpretative Rule 10(ij).

4. The R835 tuners are substantially complete "radio receivers" within the purview of item 685.23, TSUS.[8] Loudspeakers are not necessarily included in "solid-state (tubeless) radio receivers" within the purview of item 685.23, TSUS. Cf. *Montgomery Ward & Co., Inc.* v. *United States*, 70 Cust. Ct. 193, C.D. 4430, 362 F. Supp. 560 (1973) (*appeal pending*).

5. Since the R835 tuners were packed separately from the transformers, the imports are "unassembled" solid-state radio receivers within the purview of General Interpretative Rule 10(h).

6. The R835 tuners are *specially provided for* under the *eo nomine* provision in item 685.23, TSUS for "solid-state (tubeless) radio receivers". Thus, the tuners are not classifiable under item 685.25, TSUS as radio reception apparatus, other than solid-state radio receivers; nor are they classifiable under the provision in item 678.50, TSUS for machines not specially provided for, and parts thereof; nor are they classifiable under the provision in item 688.40 for electrical articles, and electrical parts of articles, not specially provided for. Moreover, in determining the classification of goods, an *eo nomine* designation must, in the absence of a clearly contrary legislative intent, be preferred to terms of general description and to enumerations which are broader in scope and less specific. *United States* v. *Astra Trading Corp.*, 44 CCPA 8, C.A.D. 627 (1956).

7. Since the R835 tuner lacks the basic components of a phonograph and tape recorder, the tuner is not within the purview of either item 685.30 as an "unfinished" radio-phonograph combination, or item 685.50 as an "unfinished" radio-phonograph-tape recorder combination. Cf. *Authentic Furniture Products, Inc.* v. *United States*, 61 CCPA 5, C.A.D. 1109 (1973).

The protests are overruled, and judgment will be entered accordingly.

---

[8] It is interesting to note that the first radio receiver, demonstrated by Heinrich Hertz in Germany in 1887, consisted simply of an open wire loop with spheres attached to the ends to form a gap. The presence of radio waves was "detected" by observing a spark set up on the sphere gap. See *Encyclopaedia Britannica*, 1970 ed., Vol. 18, p. 1090.